793 F.2d 1293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THE STEARNS & FOSTER CO., Plaintiff-Appellee Cross-Appellant
v.
DONALD R. DePRIEST; ROBERT L. CRAWFORD, JR.; BEAVER DAM
INDUSTRIES, INC., Defendants-Appellants Cross-Appellees.
 85-3090, 85-3109
 United States Court of Appeals, Sixth Circuit.
 5/12/86
 
 AFFIRMED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: MARTIN and GUY, Circuit Judges; and REED,* District Judge.
 PER CURIAM.
 
 
 1
 In this diversity breach of contract action, Robert Crawford, Jr. and Donald DePriest seek a new trial. Stearns & Foster has cross-appealed alleging erroneous jury instructions and objecting to certain evidentiary rulings. Stearns & Foster also feels it was entitled to a directed verdict on its claim against defendant Beaver Dam Industries, Inc. to recover a loan for $200,000.
 
 
 2
 Stearns & Foster Company, an Ohio corporation, sued Robert Crawford, Jr. and Donald DePriest, and Beaver Dam Industries, a Kentucky corporation over the sale of a plant in Beaver Dam, Kentucky. During the late 1960's and into the 1970's, Stearns & Foster operated a factory in Beaver Dam, Kentucky which produced synthetic fabrics known as 'non-wovens.' In 1979 Stearns & Foster decided to close and sell the plant. At that time the machinery was mothballed and factory production records were burned. Selling the plant became the responsibility of a high-level Stearns & Foster employee, who compiled a ten-page prospectus that included descriptions of machinery and factory performance levels. Upon reviewing the prospectus, defendants Crawford and DePriest became interested in the plant. After several conversations and tours, Crawford and DePriest entered into a ninety-day option agreement with Stearns & Foster on November 20, 1980 to purchase the factory. During this ninety-day period Crawford and DePriest decided to purchase the plant and plans were made for a closing. Beaver Dam Industries, Inc. was created by Crawford and DePriest as the corporate vehicle for the purchase. A final hurdle to the closing was the indenture trustee's last-minute requirement that Crawford and DePriest contribute $500,000 to equity of the new corporation instead of $300,000 as previously arranged. In order to insure completion of the agreement, Stearns & Foster offered to loan Crawford and DePriest the $200,000 to meet the equity requirement. Stearns & Foster also orally agreed to undertake efforts to provide Crawford and DePriest with a $1,000,000 line of credit necessary for start up costs and working capital. On the date of closing a telex was received from DePriest to the effect that he and Crawford accepted the loan and would repay the $200,000 in ninety days. Upon receipt of the telex the closing occurred, and the assets of the Stearns & Foster factory were transferred to Beaver Dam Industries.
 
 
 3
 This litigation began when Crawford and DePriest defaulted on the $200,000 loan. Beaver Dam, Crawford and DePriest responded to Stearns & Foster's complaint with a four-count counterclaim, alleging that Stearns & Foster had breached an alleged contract to arrange for the $1,000,00 line of credit for Beaver Dam; that Stearns & Foster was guilty of abuse of process by filing suit against Beaver Dam; that Stearns & Foster had intentionally interfered with Beaver Dam's business relationship with the First National Bank of Louisville by advising it that Beaver Dam was being sued; that Stearns & Foster had fraudulently induced defendants into buying the plant because Stearns & Foster had never intended to arrange for a line of credit for Beaver Dam.
 
 
 4
 At the conclusion of the jury trial, the court granted Stearns & Foster's motion for a directed verdict on its claim to recover the $200,000 against Crawford and DePriest individually, but not against Beaver Dam. The court also dismissed Crawford and DePriest's counterclaim for abuse of process and intentional interference with Beaver Dam's business relationship. The remaining claims, including Stearns & Foster's claim against Beaver Dam for $200,000, were submitted to the jury which returned verdicts for Beaver Dam on the $200,000 and for Stearns & Foster on the remaining counterclaims by Crawford, DePriest and Beaver Dam.
 
 
 5
 In reviewing the directed verdict issue we apply the same standard as the trial court did in sustaining the motion. See Scharfenberger v. Wengo, 542 F.2d 328, 333 (6th Cir. 1976). The question becomes whether or not there was enough probative evidence in the record from which reasonable minds could have concluded anything other than Crawford and DePriest, jointly and severally, expressly contracted to repay the $200,000 loan to Stearns & Foster and failed to do so. See Moskowitz v. Peariso, 458 F.2d 240, 244 (6th Cir. 1972). The evidence at trial establishes beyond dispute that Crawford and DePriest borrowed the money, expressly agreed to repay it and failed to do so. In fact, on cross-examination both Crawford and DePriest admitted their liability.
 
 
 6
 They argue here that the directed verdict is erroneous because undecided factual issues arising in connection with their breach of contract and fraud claims constitute a defense to Stearns & Foster's entitlement to recover the $200,000. The factual issues they allege, however, are unrelated to the agreement involving the loan. This transaction between Stearns & Foster and Crawford, DePriest and Beaver Dam involved three separate 'agreements': (1) the Option Agreement which provided the basis for the sale transaction on September 24, 1981; (2) the assistance in obtaining the line of credit agreement entered orally in June, 1981; and (3) the $200,000 loan made at closing. Crawford and DePriest urge that these three separate agreements constitute one multifaceted contract, but from the record the $200,000 loan was arranged at the last minute at the request of Crawford and DePriest and was entirely separate from any other part of the transaction. Furthermore, there was no allegation that there was any fraud or failure of consideration with respect to this loan. Indeed there could not be any--Crawford and DePriest had received the money. At argument on the directed verdict motion, the trial court stated with regard to the lack of consideration issue:
 
 
 7
 THE COURT: Nonsense, of course there was [consideration]. This entire transaction is a unitary transaction, Ms. Bison. Your clients agreed to pay x dollars for a plant. They got the plant. There may be things wrong with it. You may very well be entitled to claims of your own, but to say there was no consideration for the two hundred thousand dollars simply isn't in accordance with the evidence.
 
 
 8
 Crawford and DePriest also argue the court erred in granting directed verdicts against them on their abuse of process and tortious interference with contractual relations claims. Neither of these claims are supported by proof in the record. The abuse of process claim is spurious at best with no foundation in fact. There may have been a factual foundation for a malicious prosecution claim, but it is well established that such claims cannot be asserted in counterclaims based on the pending litigation. Similarly, there is no evidentiary basis to support the tort claim. See Industrial Equipment Co. v. Emerson Elec. Co., 544 F.2d 276 (6th Cir. 1977).
 
 
 9
 The other issues raised are without merit and are rejected.
 
 
 10
 The judgment of the trial court is affirmed.
 
 
 
 *
 Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation